# EXHIBIT 2

# Sales Representative Employment Agreement for

# the 2023-24 Sales Season

You, the undersigned individual (referred to herein as "You" or "Your") and Smart Home Pros, Inc. ("SHP"), hereby enter into this 2023-24 Sales Representative Employment Agreement ("Agreement"). You and SHP may be referred to herein individually as a "Party" or collectively as "Parties." This Agreement constitutes the terms of Your employment with SHP during the 2023-24 Sales Season (defined below).  For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>At-Will Employment</u>

Your employment will be at-will, meaning that You or SHP may terminate the employment relationship at any time, with or without cause or notice. This is the entire and complete agreement between You and SHP on this subject. This Agreement does not create any employment obligation for any fixed period. You hereby acknowledge that this Agreement is not an offer or guarantee of future employment or an offer or guarantee of a future contractual relationship.

2. <u>Term</u>

This Agreement will be effective as of the date You sign it and will continue through the end of the 2023-24 Sales Season or until it is terminated, whichever is earliest (the "Term"). Absent a Company Publication (defined below) to the contrary, the 2023-24 Sales Season will run from October 2, 2023, to September 29, 2024. SHP may decide, in its sole discretion, to extend the length of a sale season for various reasons. As such, the ending date of a sale season may extend beyond September 29, and the starting date of the subsequent sales season may start after September 29.

3. <u>Your Duties</u>

During the Term, You will perform at least the following employment duties for SHP: (i) selling, (ii) attempting to increase direct sales activities of other direct sellers working for SHP, (iii) providing motivation and encouragement, (iv) imparting skills, knowledge, or experience, and (v) recruiting (collectively "Sales Duties"). You will perform all Sales Duties under this Agreement in a legal, ethical, and professional manner and in compliance with all applicable laws, rules, regulations, and ordinances. During the Term, You will not provide any Sales Duties for any other company without the prior, express written consent of a Vice President or higher level employee of SHP or Vivint, Inc. ("Authorized Signer"), which consent will not be unreasonably withheld.

As part of the Sales Duties, You may sell products and services of Vivint, Inc. ("Vivint"), an affiliated company of SHP. Vivint will determine the prices and package configurations of those products and services. Vivint may change those prices and package configurations at any time.

You may recruit others to also work for SHP. If SHP employs those individuals, they may be deemed to be on Your team.

4. <u>Assigned Area</u>

SHP may assign You to one or more geographic areas where You are authorized to sell (collectively, Your "Assigned Area") during a specific period. You will not sell outside of Your Assigned Area during that period. If You want to sell outside of Your Assigned Area, you must first get SHP's prior authorization. Unless stated otherwise in a Company Publication, You must receive permission from an Authorized Signer. You are responsible for providing Your transportation to and from Your Assigned Area.

5. <u>Compensation</u>

a. Compensation, generally, SHP will compensate You for Your performance of the Sales Duties as outlined in the SHP Pay Scales, Residual Bonus Plan, Sales Rules, and other official compensation-related documents of SHP (each a "Compensation Document"). Each Compensation Document is available in a Company Publication and is incorporated herein by reference. You will not be entitled to any compensation under this Agreement other than the compensation outlined in the Compensation Documents, except as outlined in Section 5(c). Compensation is only paid on eligible sales, which do not include sales You make while engaging in non-compliant behavior (behavior that breaks an SHP or Vivint policy). You acknowledge that for a commission to be earned or paid on any account, including count towards levels, bonuses, equity, incentives, etc., You must comply with all applicable rules, policies, and other conditions for payment.

b. Compensation Changes. SHP may amend the Compensation Documents at any time by publishing the amended document in a Company Publication. Amended Compensation Documents will be effective seven days after being communicated to You.

c. Individualized Compensation Terms. Only an Authorized Signer may authorize any individualized compensation terms. Any such terms must be documented in writing and signed by an Authorized Signer. Any other individualized compensation terms (e.g., compensation terms told to You by Your recruiter or supervisor in a spoken conversation or written in an email, social media message, or text) will be null, void, and non-binding.

d. Leadership Level Designations. SHP may, in its sole discretion, promote You to a leadership level, such as Assistant Manager, Manager, Area Director, Senior Manager, Regional Manager, Senior Regional Manager, Partner, or Vice President. Specific compensation under the Compensation Documents may be based on or apply only to sales representatives at a certain leadership level. SHP may only share Compensation Documents with You that apply to Your leadership level. Your eligibility to be promoted to certain leadership levels and Your compensation may be based on Your sales volume and the sales volume of Your team.

e. Upfront Commissions for Solar Sales. If, as part of the Sales Duties, You sell residential solar systems (each a "Solar System"), You will be paid an upfront commission ("Upfront Commission") when You set a lead for a Solar System account or close on a Solar System account. As used herein, the phrase "set a lead" means that You generate a customer referral and transfer a referral of a consumer who has expressed their interest in purchasing a Solar System through SHP, Inc. or one of its official solar partners. As used herein, to "close" on an account means that You complete the sale of a solar system by working with a consumer who signs (i) an agreement to purchase a Solar System from SHP, Vivint, or one of Vivint's official solar partners and (ii) a financing agreement (if the consumer is going to finance the purchase of the Solar System). SHP will pay the Upfront Commission within the timeframe listed in the Compensation Document. The Upfront Commission is an advance on Your compensation for setting a lead or closing on an account for a Solar System. The Upfront Commission will not be considered earned unless (i) You are employed by SHP when the Upfront Commission is paid, and (ii) the Solar System is properly permitted, installed, and operating (collectively "Installed") within 120 days after You set a lead for or close on that Solar System account. If, for any reason, the Solar System is not Installed or, in SHP's reasonable opinion, will not be Installed within 120 days after You set a lead, You will owe that money to SHP. SHP may deduct the Upfront Commission from Your future commission or backend payments, as Section 5(f) outlines. If Your future commission or backend payments are not enough to recover the amount of the Upfront Commissions that SHP is to deduct, then SHP will request, in writing, that You repay to SHP the amount due to SHP within 30 days. You will repay that amount within that timeframe. If You do not repay that amount within 30 days, SHP and Vivint reserve the right to recover the funds through a legal proceeding or a collection agency. A complete description of the compensation plan for solar sales is outlined in the Compensation Documents.

f. Clawbacks & Offsets. To the extent permitted by applicable law, You acknowledge that SHP will be entitled to seek a refund (through offset or direct repayment) of (i) any compensation paid to You that SHP later determines was not earned by or otherwise due to You, and (ii) any other amounts owed by You to SHP. You hereby expressly authorize SHP to deduct those amounts from any amounts owing to You, including Your paycheck (which includes any backend compensation).

6. Direct Seller / Employee Status & Taxes

During the Term, You will be an employee of SHP. But for State and Federal Income Tax purposes, You are and will be paid (and income reported) as a "Direct Seller" under Internal Revenue Code § 3508 and Publication 15-A of the Internal Revenue Service Employee Supplemental Tax Guide. You are, therefore, solely responsible for the timely payment of all taxes for any amounts paid to You under this Agreement, including, but not limited to, all federal, state, or local taxes. SHP is under no obligation to withhold any amounts for taxes for You nor to inform You of any tax obligations, prepare any tax reports, or transfer any amounts for taxes. SHP will provide workers' compensation and general liability insurance coverage under SHP's insurance policies. If SHP is required by state law, it will withhold employment taxes, such as unemployment withholdings.

7. Policies & Code of Conduct

During the Term, You will be subject to and comply with all applicable employment and other policies of SHP, including, but not limited to, the Vivint Employee Handbook, the Housing Rules, the Drug and Alcohol Policy, sexual harassment and discrimination policies, the Code of Conduct, and the SHP Supplemental Code of Conduct (collectively "Company Policies"). Company Policies may be published in a Company Publication. SHP may amend the Company Policies from time to time in its sole discretion by publishing an updated version in a Company Publication. Amendments to Company Policies may require acknowledgment by You within 30 days of release. Failure to provide such acknowledgment is grounds for discipline, including termination. You acknowledge receipt of the Code of Business Conduct and Ethics, included in Attachment 3 of this Agreement, and the SHP Supplemental Code of Conduct, included in Attachment 4 (collectively the "Codes of Conduct and Ethics"). Violations of the Codes of Conduct and Ethics and other Company Policies may subject You to discipline, including termination for cause.

8. Training

Training will be assigned to You. You must complete any assigned training within the required timelines. Failure to complete training within the established timelines will subject You to discipline, including termination for cause.

9. Company Publications

SHP may communicate with You and publish official company messages, documents, and policies through email (to Your company email address), text (to a phone number You provide SHP), a messaging app (e.g., Teams, etc.), or by publishing or pushing to You content on an official company tool, such as an app, intranet, web service, or website (each a "Company Publication"). Examples of such tools include but are not limited to the ConveYour app/site, the Vivint Hub (available at https://thehub.vivint.com/policies-and-forms/), and Workday.

10. Licensing

Your performance of the Sales Duties will require You to apply for and acquire certain licenses and permits (e.g., door-to-door sales licenses, peddler permits, or licenses or permits authorizing You to the sale of alarm systems). It is Your responsibility to acquire all such licenses and permits. Before engaging in any sales activities, You will (i) complete all licensing applications necessary to perform the Sales Duties in Your Assigned Area and (ii) provide accurate and truthful information on all licensing applications or to any governmental entity that requests any information from You for purposes of licensing, permits, or other requirements to perform the Sales Duties. Your failure or inability to obtain any license or permit necessary or required for You to perform the Sales Duties, or performance of any Sales Duties without the necessary license or permit is a breach of this Agreement and may result in Your termination. Please contact the Licensing department (employeelicensing@vivint.com) if You have any questions or concerns about the licensing process. This Agreement is contingent on You signing the Acknowledgement Regarding Your Licensing Obligations in Attachment 1.

11. Uniform & Equipment

a. Uniform & Appearance. While performing the Sales Duties, the image You project must demonstrate that Vivint is a reliable Smart Home Services provider. Your appearance constitutes a vital element of that image. It is Your responsibility to communicate the image of professionalism and security to the public while engaging in the Sales Duties. SHP will provide You with a uniform, including one or more polo-style shirts, a hat or cap, and a picture identification badge and lanyard. You must always wear an SHP-issued uniform and badge and comply with any company dress code requirements while performing Sales Duties. The badge must be worn visibly in front of You. You may not alter or wear the SHP uniform while working for any other company. You must not wear the uniform for personal use outside work or when off-duty. You are responsible for caring for and maintaining Your SHP-issued uniform in good condition. You will return the SHP-issued uniform to SHP at the end of the Term, upon termination of this Agreement, or if SHP requests it. If You lose Your identification badge or if it is stolen, You will immediately report that to Your manager or supervisor, and, You are responsible for purchasing replacements at the SHP store. You will not wear any unauthorized Vivint-branded apparel or apparel of a competitor or related company while performing the Sales Duties.

b. Company Equipment. SHP may provide You with various work materials and equipment necessary to perform the Sales Duties. This may include an iPad or other tablet, forms, paperwork, Vivint's Street Genie software access, and other online platforms necessary to perform the Sales Duties. You are responsible for returning this equipment to SHP at the end of Your employment or when requested by SHP. If You fail to return SHP's equipment, You authorize SHP to deduct the cost of that equipment from Your paycheck.

12. Housing

SHP may make available to You under SHP's housing program optional single or family housing accommodations and furniture rental for some or all the duration of the Term. If You participate in that program, You agree to the following:

a. Housing Fees & Elections. SHP will, and You hereby direct it to, deduct a housing fee from Your paycheck each week during the Term. A Company Publication will list the housing fee schedule in the Sales Rules. This fee will cover rent, furniture, and reasonable utilities costs. If You elect to use SHP's housing as of the cut-off date communicated by SHP (typically around April 1st of each year), then You will be bound to that election during the remainder of the Term.

b. Housing Rules. You will comply with the terms of the SHP Housing Rules, which are published in ConveYour. If You select family housing accommodations, You will be responsible for ensuring that others residing in or visiting Your accommodations comply with the SHP Housing Rules, and You will be responsible for their non-compliance as if that non-compliance were Your own.

c. Property Damage. You will be responsible for any property damage caused by You, Your family, or Your guests in or around the housing facility. You are also responsible for additional fees or fines imposed on You by a landlord (e.g., unauthorized pet fees, fees for lost keys, amounts charged to You for trash left outside, etc.). You hereby authorize SHP to deduct all such amounts from Your paycheck. If You are an Area Director (aka Team Manager) level employee, SHP will, and You hereby direct it to, deduct from Your paycheck (including any backend payments to which You otherwise might be entitled) any amounts required to cover property damage for representatives in Your office that is more than the amounts paid by those representatives. If You are an Area Director or Regional Manager and if You consent for a team to break the terms of a lease agreement, then You will split the costs equally (unless mutually agreed to split them otherwise) associated with breaking that lease with Your Regional Manager (if You are a Team Manager) or the applicable Team Manager (if You are a Regional Manager).

d. Holdovers. If Your employment with SHP is terminated (whether voluntarily or involuntarily)

before the end of the sales season, You agree to vacate the SHP housing within 24 hours. If You stay in SHP provided housing after the Term of this Agreement, or after 24 hours following Your termination, then You agree to pay SHP rent in the amount of $100 per day for Your additional stay as well as any costs and fees that SHP incurs

in enforcing this provision, including costs associated with evicting You. Those costs and fees include collections costs and attorney's fees. You agree that any such rent, costs, and fees may be deducted from Your paycheck.

13. <u>Drug Policy & Testing</u>

SHP is a drug-free workplace, and You are prohibited from manufacturing, distributing, dispensing, possessing, selling, or using illegal drugs or any other controlled substance not prescribed explicitly to You by a medical professional, in any SHP-provided housing, at any workplace or while performing the Sales Duties. You may not consume, possess, or be under the influence of any alcoholic beverages while performing the Sales Duties. Violation of the Drug and Alcohol Abuse Policy, published in a Company Publication, may result in the termination of this Agreement. You hereby consent to random drug testing of You under the Drug and Alcohol Abuse Policy. If You are involved in a physical altercation, You hereby consent to a drug and alcohol screening by the Company.

14. <u>Background Check</u>

This Agreement is contingent on SHP's receipt, evaluation, and approval of a background check on You. Accordingly, You hereby expressly authorize SHP or any of its affiliates to perform a background check on You, and You will cooperate in the performance of said background check. Failure to provide consent to or the required information for a background check or failure to answer any background question fully or truthfully will result in the termination of this Agreement. All information obtained from a background check will be used solely for employment purposes.

15. <u>Communication & Cooperation</u>

Periodically, a government official or agency may request employee information requiring Your involvement (e.g., providing information to complete the E-Verify process, assistance with a state reporting process, response to a subpoena, etc.). In these cases, SHP, or its subsidiary and affiliated companies, may request that You cooperate with SHP and the government agency or official. You agree to respond to these requests for information or consent promptly, as soon as practical, and in all cases, in less than two weeks. Occasionally, a response sooner than two weeks may be required; if so, it will be communicated and enforced. Failure to respond to written requests, including text or email, may result in termination of this Agreement. You should notify SHP within 72 hours if You are arrested, charged, or indicted for any criminal offense above a Class C misdemeanor during the Term. This notification should go to SHP's HR, Licensing, and Compliance Departments. While the arrest, charge, or indictment may not result in any change in the relationship between You and SHP, failure to report violates this Agreement and may result in termination of this Agreement.

16. <u>Ownership of Work Product</u>

You will keep SHP fully informed of any inventions or works of authorship You create or invent, either alone or with others, during Your employment with SHP related to the business of SHP and any of its affiliates or which result from tasks assigned to You by SHP. You hereby assign to Vivint all rights in and to such inventions and works of authorship. You covenant and agree that, upon the request of SHP, You will make, execute, and deliver such additional assignments and other instruments as necessary or convenient for effectuating or further memorializing that assignment. You further agree that (i) all such inventions and works of authorship that are related to the business of SHP, or which result from tasks assigned to You by SHP, will be the property of Vivint; (ii) You will not assign to any person other than Vivint any interest therein; and (iii) You, without charge to Vivint, hereby assign to Vivint all of Your rights, titles or interests in any such inventions and works of authorship, and execute, acknowledge and deliver such instruments as are necessary to confirm the ownership thereof by Vivint.

This assignment obligation does not apply to an invention that You developed entirely on Your own time without using the employer's equipment, supplies, facilities, or trade secret information, except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention, to SHP's or Vivint's business, or actual or demonstrably anticipated research or development of Vivint or SHP; or (2) result from any work performed by You for SHP or Vivint.

17. <u>Agreement Termination</u>

As noted in Section 1, either Party may terminate this Agreement and Your employment at any time.

    a.    Voluntary Termination. If You terminate this Agreement/resign before the end of the 2023-24 Sales Season:

        i.    You will not be entitled to receive any advances, bonuses, or commissions after the termination of this Agreement, regardless of whether You would have been eligible or entitled to such advances, bonuses, or commissions had the Agreement not terminated. You will be, however, be entitled to Your own personal or individual commissions paid on the standard payment schedule for sales You made before the termination date.

        ii.    Notwithstanding the above provision, You will be entitled to receive an override bonus on accounts sold by Your assigned downline that are sold before the date of termination of this Agreement by SHP and that meet all other requirements in this Agreement. For this Agreement, an override is a bonus paid to You for accounts sold by other representatives assigned to Your downline or team.

        iii.    You will pay SHP for all rent, utilities, and deposits on housing and furniture You requested for the entirety of the Term, although You do not use the housing after Your resignation.

    b.    Termination for Cause. If SHP terminates this Agreement for Cause (defined below) before the end of the Term:

        i.    You will not be entitled to receive any advances, bonuses, or commissions for accounts sold or installed (in the case of solar energy systems) after Your termination (including Your voluntary resignation), regardless of whether You would have been eligible or entitled to such advances, bonuses, or commissions, had this Agreement not been terminated by SHP before the end of the Term.
Notwithstanding the foregoing, You will be entitled to Your own personal or individual commissions paid on the standard payment schedule for sales You made before the termination date.

        ii.    You will pay SHP for all rent, utilities, and deposits on housing and furniture You requested for the entirety of the Term.

Termination for "Cause" will include, but is not limited to any of the following: (i) commission of a crime involving moral turpitude, theft, fraud or deceit; (ii) conduct that brings SHP, Vivint, or any of its affiliates, into public disgrace or disrepute, including, but not limited to, being arrested for or charged with a crime; (iii) violation or breach of any provision of this Agreement, including, but not limited to, the non-solicitation provisions; (iv) violation of Company Policies; (v) providing any false or misleading information to SHP, Vivint, or any of SHP's affiliates, or directing, instructing or encouraging any one to provide false or misleading information to SHP, Vivint, or any of SHP's affiliates (including, but not limited to, directing, instructing or encouraging a person to provide false or misleading information on any survey or any financing application); (vi) failure to perform any of Your material obligations under this Agreement; and/or (vii) failure or inability to obtain or maintain any necessary or required license(s) or permit(s).

If You leave Your Assigned Areas without permission from Your supervisor and do not return to work in that area for more than ten calendar days, SHP will deem You to have terminated this Agreement as of the last day You worked in Your Assigned Area.

    c.    Termination Without Cause. SHP may terminate this Agreement without notice at any time and for any or no reason or cause. If SHP terminates this Agreement other than for Cause before the end of the Term, Your eligibility for all advances, bonuses, override bonuses, or any other compensation that has not been paid will not be affected. The payment of advances, bonuses, override bonuses, or any other compensation to You will be

governed by this Agreement and paid on the standard payment schedule as though You worked through the end of the Term.

18. <u>Non-Solicitation, Confidentiality, & Non-Disclosure</u>

    a. Confidential Information. During Your employment with SHP, You may be told or otherwise exposed to certain Confidential Information (defined below). You understand and acknowledge that SHP and Vivint (collectively the "Company Group") have invested, and continue to invest, substantial time, money, and specialized knowledge into creating a customer base, generating customer and potential customer lists, recruiting, and training a sales force, developing products and services, and improving their offerings in the fields of home security, smart home technology and services, and residential solar. Because of these efforts, the Company Group has created and continues to use and create Confidential Information, which provides the Company Group with a competitive advantage over others in the marketplace. For purposes of this Agreement, "Confidential Information" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, transactions, potential transactions, know-how, trade secrets, computer programs, computer software, applications, databases, compilations, technologies, manuals, records, systems, material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, payroll information, staffing information, personnel information, employee lists, internal controls, security procedures, market studies, sales information, revenue, costs, communications, product plans, inventions, customer information, customer lists, of the Company Group or its businesses or any existing or prospective customer, or of any other person or entity that has entrusted information to the Company Group in confidence.

    b. Non-Disclosure & Confidentiality. You agree (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any entity or person whatsoever (including other employees of the Company Group) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Company Group and, in any event, not to anyone outside of the direct employ of the Company Group except as required in the performance of the Sales Duties; and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Company Group, except as required in the performance of the Sales Duties acting on behalf of the Company Group in each instance (and then, such disclosure will be made only within the limits and to the extent of such duties or consent). Nothing in this paragraph will be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order.

    c. Non-Solicitation & Non-Hire of Personnel. You agree that during the Term and for a period of 18 months immediately following the end of the Term, You will not, in any capacity (e.g., on Your behalf or on behalf of another person or entity), directly or indirectly, regardless of who initiates the contact, (i) solicit, encourage, assist, or attempt to influence an employee or consultant of Vivint or SHP to leave the employ of Vivint or SHP; or (ii) hire, employ, recruit, or solicit an employee or consultant of Vivint or SHP.

    d. Non-Solicitation of Customers. You agree that during the Term and for a period of three years immediately following the end of the Term, You will not, in any capacity (e.g., on Your own behalf or on behalf of another person or entity) directly or indirectly, regardless of who initiates the contact, solicit, encourage, assist, or attempt to influence any customer of SHP or Vivint who lives within 100 miles of a location where You performed the Sales Duties, to (i) terminate, cancel, or not renew any contract with SHP or Vivint or (ii) enter into a contract with another company for services or products that are similar to or competitive with those of Vivint or its official

solar partners. This Section 18.d ("Non-Solicitation of Customers") will not apply If Your principal work location is in the State of California.

  e. Blue Penciling. If either Section 18(c) or (d) is determined to be unenforceable by a court of competent jurisdiction or an arbitrator, then the Parties agree that such court or arbitrator may modify and enforce such restrictions to the maximum extent that is reasonable under the circumstances existing at that time.

  f. Injunctive Relief and Liquidated Damages. You acknowledge and agree that Your breach of any of the provisions in this Section 18 will cause SHP immediate and irreparable harm and entitle SHP to injunctive relief that prohibits You from continuing any such violation. In addition, such a violation will entitle SHP to recover from You liquidated damages of $25,000 per violation. You and SHP acknowledge that SHP's entitlement to liquidated damages under this subsection does not preclude SHP from being entitled to injunctive relief. You and SHP acknowledge that (i) the amount of loss or damages likely to be incurred by SHP from Your violation of any of the provisions in this Section 18 is impossible or difficult to calculate precisely; (ii) the amount specified in this paragraph bears a reasonable relationship to, and are not plainly or grossly disproportionate to, the probable loss likely to be incurred in connection with the misconduct, and (iii) a reason You and SHP agree to this amount is the uncertainty and cost of litigation regarding the question of actual damages. You authorize and direct SHP to deduct the liquidated damage amount from any amounts owing to You.

19. Vivint as Intended Third-Party Beneficiary

Vivint will be, and is hereby, named as an express and direct intended third-party beneficiary of this Agreement and is not merely an incidental or potential beneficiary of this Agreement. As such, Vivint is legally entitled to enforce this Agreement.

20. Privacy

SHP's use of Your personal information will follow the Vivint Employee Privacy Notice, published in a Company Publication, and any other applicable privacy notices, disclosures or consents You may be provided.  You expressly acknowledge that SHP collects Your geolocation when You use the Street Genie™ software program. SHP uses this information to identify if You are in Your Assigned Area when performing the Sales Duties. You hereby consent to that collection and use. SHP may also share Your driver's license information with housing providers, as applicable, and to apply for licenses and permits when required.

21. Governing Law, Jurisdiction & Venue, and Agreement to Arbitrate

This Agreement will be construed by, and governed by, the laws of the State of Utah without regard to the application of conflicts of law principles. Any disputes regarding the interpretation or enforcement of this Agreement will be subject to arbitration instituted under the Voluntary Mutual Arbitration Agreement & Class, Collective & Representative Action Waiver executed between You and SHP, and attached as Attachment 2 hereto; provided, however, that either You or SHP may bring an action for entry of a temporary restraining order, preliminary injunctive relief, or permanent injunctive relief, in the federal district court of Utah or the Fourth Judicial District Court of the State of Utah. You agree and consent to these two courts having exclusive jurisdiction over claims for a temporary restraining order or other injunctive relief arising out of a dispute regarding the terms of this Agreement.

22. Miscellaneous

  a. Amendments. No supplement, modification, amendment, or waiver of the terms of this Agreement will be binding on the Parties hereto unless executed in writing by the Parties hereto.

  b. Notices. All notices required or permitted under this Agreement, excluding those identified as being made in Company Publications, will be in writing and will be deemed delivered when delivered in person or on the third day after being deposited in the United States mail, postage paid, addressed as follows:

If to SHP, Inc.:

Head of DTH Sales
Smart Home Pros
4931 North 300 West  Provo,
Utah 84604
josh.crittenden@vivint.com

With a Copy to:

Legal Department
Vivint, Inc.
4931 North 300 West  Provo,
Utah 84604
legal@vivint.com

If to You:

At the address(es) or email address(es) listed on Your W-9, application, employee file, or this Agreement.

    c.    Severability. Each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law. Still, if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other provision or any other jurisdiction. Still, this Agreement will be reformed, construed, and enforced in such jurisdiction as if such invalid, illegal, or enforceable provision had never been contained herein.

    d.    Entire Agreement. This Agreement, together with all the Attachments and Company Policies referenced herein or attached hereto, represents the entire agreement between the Parties about the subject matter hereof and supersedes all prior representations and agreements, whether oral or written, about the subject matter hereof, and cannot be modified, changed, waived, or terminated except by a writing signed by the Parties. No course of conduct, trade, custom, or usage will be used to explain, modify, amend, or otherwise construe this Agreement.

    e.    Successors in Interest. This Agreement will be binding upon and inure to the benefit of the current or future successors or assignees of SHP.

    f.    Headings. The headings used in this Agreement are for convenience only and are not to be considered in construing or interpreting this Agreement.

    g.    Drafting Ambiguities. Each Party has read this Agreement and has had the opportunity to review it with counsel if desired. Neither Party relies on any statement or representation of the other Party in signing this Agreement. The rule of construction that any ambiguities are to be resolved against the drafting Party will not be

employed in interpreting this Agreement or of any amendments or exhibits to this Agreement.

      h.      Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original and constitute a single integrated document.

      i.      Survival of Certain Terms. The termination of this Agreement or Your employment relationship with SHP, regardless of the reason or time of such termination, will have no force or effect upon the validity or enforceability of the restrictions and agreements contained in Section 18 of this Agreement, which restrictions and agreements, and the remedies for violations thereof, will be continuing in nature.

      j.      Waiver. The failure of either Party to enforce any provision of this Agreement will not be construed as a waiver of limitation of that Party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

      k.      No Reliance. The Parties each acknowledge and agree that in entering into this Agreement, neither is relying upon any representations or statements made by the other than those set forth expressly herein. Further, the Parties expressly disclaim reliance upon any representations, statements, understandings, or agreements regarding Compensation or any other matter other than those set forth expressly herein.

[The remainder of this page is left blank intentionally. The signature page follows.]

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE CAREFULLY READ AND FULLY UNDERSTAND ALL OF THE PROVISIONS OF THIS AGREEMENT, INCLUDING SPECIFICALLY AND WITHOUT LIMITATION THE MUTUAL ARBITRATION AGREEMENT AND CLASS, COLLECTIVE AND REPRESENTATIVE ACTION WAIVER IN ATTACHMENT 2, AND THAT YOU ARE VOLUNTARILY ENTERING INTO BOTH.

YOU, THE SALES REPRESENTATIVE

Nathan Lords
_____
Your Printed Name

*[signature]*                                                    09/01/2023
_____    _____
Your Signature                                                  Date

2912 Oakhurst drive Slc Utah 84108
_____
Your Mailing Address (Street Address, City, State, Zip)

nathanlords@icloud.com
_____
Your E-mail Address


SMART HOME PROS, INC.

Todd Santiago
_____
Printed Name

*[signature]*
_____
Signature

CRO
_____
Title

Attachment 1
to Sales Representative Employment Agreement: for the 2023-24 Sales Season

Acknowledgement Regarding Your Licensing Obligations

You, the undersigned representative ("You"), acknowledge the following:

1. You understand that state and local laws and regulations in the areas where You sell may require You to apply for certain licenses and permits before You start selling in the area. Examples of these licenses include door-to-door sales licenses, peddler permits, and licenses or permits authorizing You to sell burglar/alarm systems. All SHP representatives must be properly licensed to perform the Sales Duties on their own behalf. If a Supervisor, Manager, or another sales representative knows or tells You to work unlicensed, that individual violates SHP policy.

2. You acknowledge that it is Your responsibility to, and You will (i) apply for and acquire all required licenses and permits to perform the Sales Duties; (ii) provide accurate and truthful information on all associated permit and license applications; and (iii) not perform any Sales Duties under that agreement for SHP until You have acquired all required, applicable licenses and Permits.

3. Your failure or inability to perform the responsibilities outlined in #2 above is a breach of the Agreement (defined below) and may result in the termination of Your employment with SHP.

4. If You are a supervisor, it is Your responsibility to inform those You supervise of the local licensing and permitting policies and requirements and assist them in acquiring such licenses and permits, when necessary.

Capitalized terms not defined in this document have the same defined meaning given in the Sales Representative Employment Agreement: for the 2023-24 Sales Season (the "Agreement").

BY SIGNING THIS ACKNOWLEDGMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU FULLY UNDERSTAND YOUR LICENSING OBLIGATIONS.

Your Signature: _____

Your Printed Name: Nathan Lords

Date: 09/01/2023 15:27

Attachment 2
to Sales Representative Employment Agreement: for the 2023-24 Sales Season

Voluntary Mutual Arbitration Agreement & Class, Collective & Representative Action Waiver

This Voluntary Mutual Arbitration Agreement & Class, Collective & Representative Action Waiver ("Arbitration Agreement") is entered into between ("Employee") and Smart Home Pros, Inc., including any parent, subsidiary, agent, dealer, affiliate, assignee, or assignor of Smart Home Pros, Inc. ("SHP") (collectively, the "Parties"), in consideration of Employee's employment or continued employment with SHP and the mutual promises contained within this Arbitration Agreement.

Arbitration

Occasionally, disputes need to be resolved in a formal proceeding. While this has traditionally taken place in the courts after a lawsuit has been filed, Employee and SHP agree to submit all disputes that arise out of or relate to Employee's employment or separation from employment that would otherwise be resolved in a court of law or before another forum, to final and binding arbitration before a neutral arbitrator and not to any court, as specified below.

Claims Covered By The Arbitration Agreement

Employee and SHP agree to arbitrate before a neutral arbitrator all disputes or claims between Employee and SHP, including claims against any current or former officer, director, shareholder, agent, or employee of SHP, that arise out of or relate to Employee's recruitment or hiring, employment with or separation from SHP.

This Arbitration Agreement also applies, without limitation, to disputes regarding any city, county, state, or federal wage and hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, discrimination, harassment, breach of contract, fraud, tort, defamation, and claims arising under the Uniform Trade Secrets Act, Civil Rights Acts, Americans with Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Family Medical Leave Act, Fair Labor Standards Act, Fair Credit Reporting Act, Genetic Information Non-Discrimination Act, the California Fair Employment and Housing Act and any other state or local law or statute, if any, addressing the same or similar subject matters, and all other similar federal, state and local statutory and common law claims. California employees expressly agree that all claims under the California Labor Code, including, but not limited to, claims for overtime, unpaid wages, and claims involving meal and rest breaks will be subject to this Arbitration Agreement.

This Arbitration Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes expressly excluded by the terms of this Arbitration Agreement.

Claims Not Covered By The Arbitration Agreement

Notwithstanding the above, Employee and SHP agree that disputes and claims for workers' compensation benefits, unemployment compensation benefits, state or federal disability insurance, claims for benefits under a plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), administrative charges for unfair labor practices brought before the National Labor Relations Board and claims for temporary equitable relief in the form of a temporary restraining order or preliminary injunction or any other temporary equitable remedy which may then be available, are not covered by this Arbitration Agreement and will therefore be resolved in any appropriate forum as required by the laws then in effect. Moreover, Employee and SHP also agree that any disputes brought by Employee to enforce or obtain relief from a loan or advance agreement between Employee and SHP, or SHP's agent, and any disputes brought by SHP, or SHP's agent to enforce or collect monies paid to employees under a loan or advance agreement, are not covered by this Arbitration Agreement and will therefore be resolved under the terms of the loan or advance agreement.

Regardless of any other terms of this Arbitration Agreement, claims may be brought before, and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, the National Labor Relations Board, the federal Occupational Safety and Health Commission, or the California Department of Fair Employment and Housing. Nothing in this Arbitration Agreement will be deemed to preclude or excuse a party from bringing a timely administrative claim against the proper party, entity, or individual before any agency to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Employee and SHP understand and agree that any demand for arbitration by either Employee or SHP will be filed within the statute of limitation that applies to the claim(s) upon which arbitration is sought or required.

Final And Binding Arbitration

Employee and SHP understand and agree that the arbitration of disputes and claims under this Arbitration Agreement will be instead of a court trial before a judge or a jury. Employee and SHP understand and agree that, by signing this Arbitration Agreement, the Parties are expressly waiving all rights to a trial before a judge or a jury regarding any disputes and claims which the Parties now have or which we may in the future have that are subject to arbitration under this Arbitration Agreement. The Parties also understand and agree that the arbitrator's decision will be final and binding on both SHP and Employee.

Class, Collective, And Representative Action Waiver

All covered claims under this Arbitration Agreement must be brought in the Parties' individual capacity and not as a plaintiff or class member in any purported class, collective or representative proceeding. The Parties expressly waive any right concerning any covered claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant, or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or court. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s) unless agreed to in writing by all Parties. Furthermore, if a court orders that a class, collective, or other representative or joint action should proceed, such action may only proceed in court, and in no event will such action proceed in the arbitration. This provision will not constitute a waiver of the Parties' rights under Section 7 of the National Labor Relations Act, as amended, to engage in protected concerted activity. However, a party may lawfully seek enforcement of this provision and seek dismissal of class, collective, or representative actions or claims.

The arbitrator's authority to resolve disputes and make awards under this Arbitration Agreement is limited to disputes between (i) Employee and SHP; and (ii) Employee and any current or former officers, directors, employees, and agents of SHP if such individual is sued for conduct arising out of their employment. No arbitration award or decision will have any preclusive effect on issues or claims in any dispute with anyone who is not a named party to the arbitration.

If the class, collective, or representative action waiver is deemed to be unenforceable by a court in whole or in part in a final judicial proceeding, the Employee and SHP agree that this Arbitration Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

Mediation Procedures

Employee and SHP understand and agree that, before invoking binding arbitration, the parties have the option to participate in a mediation of any dispute covered by this Arbitration Agreement. The cost of mediation will be borne equally by the Parties. The mediation will be conducted in the county where the Employee was or is employed by SHP. The parties will mutually agree to the person serving as mediator.

Arbitration Procedures

Employee and SHP understand and agree that the arbitration will be conducted in accordance with the AAA Employment Arbitration Rules and Mediation Procedures ("AAA Rules") to the extent not inconsistent with the terms of this Arbitration Agreement; provided, however, that each party will have the right to engage in discovery, including but not limited to the taking of no more than three party or non-party witness depositions, unless a greater number is ordered by the arbitrator. The arbitrator will have jurisdiction to hear and rule on prehearing disputes and is authorized to hold pre-hearing conferences by telephone or in-person as the arbitrator deems necessary. The arbitrator will have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party. Either party may obtain a court reporter to provide a stenographic record of proceedings. Either party, upon request at the close of the hearing, will be given leave to file a post-hearing brief. The time for filing such a brief will be set by the arbitrator. The arbitrator will render a written award and opinion. The arbitrator will have the authority to award any damages authorized by law for the claims presented, including punitive damages.

Either party will have the right, within 20 days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party will have 20 days from the date of the motion to respond. The arbitrator will reconsider the issues raised by the motion and promptly either confirm or change the decision, which (except as provided by this Arbitration Agreement) will then be final and conclusive upon the Parties.

The AAA Rules may be found online at https://www.adr.org/sites/default/files/EmploymentRules _Web_2.pdf or by using an internet search engine to locate "AAA Employment Arbitration Rules". A printed copy of these rules is also available upon request to Vivint's Human Resource Office.

Place Of Arbitration

Employee and SHP understand and agree that the arbitration will take place in the county in which Employee works or worked at the time the arbitrable dispute or claim arose.

Costs Of Arbitration

Employee and SHP understand and agree that, to the extent required by controlling law, as determined by the arbitrator, SHP will bear the arbitrator's fee and any other type of expense or cost that Employee would not be required to bear if the dispute or claim was brought in court as well as any other expense or cost that is unique to arbitration. The filing party will be responsible for their respective arbitration filing fees, attorneys' fees, and costs.

Confidentiality

Except as may be required by law, neither a party nor the arbitrator may disclose the existence, content, or results of any arbitration without the prior written consent of both Parties, unless to protect or pursue a legal right.

Severability

Employee and SHP understand and agree that if any term or portion of this Arbitration Agreement will, for any reason, be held to be invalid or unenforceable or to be contrary to public policy or any law, then, except as otherwise provided in this Arbitration Agreement, the remainder of this Arbitration Agreement will not be affected by such invalidity or unenforceability but will remain in full force and effect, as if the invalid or unenforceable term or portion thereof had not existed within this Arbitration Agreement.

Resolution Of Disputes

Employee and SHP understand and agree that any dispute as to the arbitrability of a particular issue or claim pursuant to this Arbitration Agreement is to be resolved in arbitration. The arbitrator, and not any federal, state, or local court or agency, will have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement including, but not limited to any claim that all or any part

of this Arbitration Agreement is void or voidable. Notwithstanding the foregoing, any other provision of this Arbitration Agreement, or any provision of the AAA Rules, any issue concerning (1) the validity of the class, collective, or representative or joint action waiver provided in this Arbitration Agreement or
(2) whether a claim is one for temporary equitable relief not covered by this Arbitration Agreement must be decided by a court with jurisdiction over the Parties, and an arbitrator does not have authority to consider either issue. If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Arbitration Agreement. If the class, collective, or representative or joint action waiver is found to be enforceable, any individual claims must proceed in arbitration.

Complete Agreement

Employee and SHP understand and agree that this Arbitration Agreement contains the complete agreement between SHP and Employee regarding the subject of arbitration of disputes, except for any arbitration agreement in connection with any benefit plan or as otherwise provided in this Arbitration Agreement; that it supersedes any and all prior representations and agreements between the Parties regarding the subject of arbitration of disputes, if any; and, other than an Employee opting out as described below, the Arbitration Agreement may be modified only in a writing, expressly referencing this Arbitration Agreement and Employee by full name, and signed by an officer of SHP and Employee.

Knowing And Voluntary Agreement

EMPLOYEE AND SHP UNDERSTAND AND AGREE THAT EMPLOYEE AND SHP HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY OF THEIR OWN CHOOSING BEFORE SIGNING THIS ARBITRATION AGREEMENT, AND EMPLOYEE AND VIVINT HAVE HAD AN OPPORTUNITY TO DO SO. EMPLOYEE AND VIVINT AGREE THAT EACH HAS READ THIS ARBITRATION AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS AND THAT BY SIGNING IT, EACH IS WAIVING ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR A JURY OF ANY AND ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS ARBITRATION AGREEMENT.

Election to Opt-Out of Mutual Arbitration Agreement

IN THE EVENT EMPLOYEE DECIDES AFTER THE EMPLOYEE EXECUTES THIS ARBITRATION AGREEMENT
THAT THE EMPLOYEE DOES <u>NOT</u> WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION, THE EMPLOYEE MUST OPT OUT BY PROVIDING WRITTEN NOTICE (INCLUDING FULL NAME AND DATE OF HIRE) TO: VIVINT, ATTN: V.P. OF HUMAN RESOURCES, 4931 NORTH 300 WEST, PROVO, UT 84604, POSTMARKED NO LATER THAN 30 DAYS FROM WHEN EMPLOYEE INITIALLY SIGNED THIS ARBITRATION AGREEMENT. THE NOTICE SHOULD BE SIGNED BY THE EMPLOYEE AND STATE THAT THE "EMPLOYEE ELECTS TO OPT OUT OF THE MUTUAL ARBITRATION AGREEMENT."

BY SIGNING THIS ARBITRATION AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU HAVE CAREFULLY READ AND FULLY UNDERSTAND ALL OF THE PROVISIONS OF THIS ARBITRATION AGREEMENT, INCLUDING YOUR RIGHT TO OPT-OUT OF ARBITRATION.

YOU, THE SALES REPRESENTATIVE

Nathan Lords
_____
Your Printed Name

_____  09/01/2023
Your Signature                     Date

2912 Oakhurst drive Slc Utah 84108
_____
Your Mailing Address (Street Address, City, State, Zip)

nathanlords@icloud.com
_____
Your E-mail Address


SMART HOME PROS, INC.

Todd Santiago
_____
Printed Name

_____
Signature

CRO
_____
Title

Attachment 3
to Sales Representative Employment Agreement: for the 2023-24 Sales Season

Code of Conduct

Attachment 4
to Sales Representative Employment Agreement: for the 2023-24 Sales Season

Smart Home Pros Supplemental Code of Conduct

Click here to view the NRG Code of Conduct