# EXHIBIT 14

**VIVINT SMART HOME, INC.**
**PHANTOM STOCK AND LONG TERM INCENTIVE PLAN**
**UNIT AGREEMENT**


**SHAW, JAYCEN K**
**636 W 1860 N**
**WASHINGTON UT 84780**

This Unit Agreement (the "Agreement") is made as of **April 15, 2023** (the "Grant Date"), between NRG Energy, Inc. (the "Company"), and **SHAW, JAYCEN K** (the "Participant") pursuant to the Vivint Smart Home, Inc. 2020 Omnibus Incentive Plan (the "Plan"). Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

**If you disagree with any of the terms of this award or choose not to accept this award, please contact Peter Johnson at 609.524.4759 within 45 days of the Grant Date. Otherwise, you will be deemed to have accepted this award under the terms and conditions set forth in this Agreement and the Plan.**

TERMS AND CONDITIONS

1. **NUMBER OF UNITS GRANTED: 2,321** (the "Units").

2. **VESTING SCHEDULE:** Provided that the Participant has been continuously employed by the Company during the vesting period, the Units will vest one-third each year beginning on April 15, 2024. For the avoidance of doubt, the vesting period for the second and third portions of the Units begins when the previous one-third portion of the Units has completed vesting.

   Notwithstanding the foregoing, to the extent the Participant is a direct-to-home ("DTH") sales leader and participant in one of the Company's DTH compensation plans, no RSUs shall become vested on any applicable vesting date unless, as of such vesting date, (i) the Participant is party to a Sales Representative Employment Agreement with the Company or one of its subsidiaries and actively selling during the Sales Season in which the applicable vesting date falls and (ii) with respect to the most recently completed Sales Season prior to the applicable vesting date, that Participant has at least either (x) 100 Personal Accounts or (y) 1,000 Downline Accounts. To the extent that the conditions set forth in (i) and (ii) in the previous sentence are not met on the applicable vesting date, as determined by the Committee in its sole discretion, any RSUs that would otherwise have become vested on such date in accordance with this Grant Notice will be forfeited for no consideration.

   For purposes of this Grant Notice:

   a. "Downline Accounts" means any funded (determined in accordance with the Company's Sales Rules which may be amended or restated from time to time) DTH account sold, in respect of a Sales Season, by any Company employee who is managed by such Participant, excluding, for the avoidance of doubt, any Personal Accounts.

b. "Personal Accounts" means any funded (determined in accordance with the Company's Sales Rules which may be amended or restated from time to time) DTH account sold, in respect of a Sales Season, directly by such Participant and the Participant is listed as the sales representative on such account, excluding, for the avoidance of doubt, any Downline Accounts.

c. "Sales Season" means each period between October 1 of one year and September 30 of the subsequent year.

3. **PAYMENT OF UNITS:** Upon vesting of the Units, subject to the terms and conditions of this Agreement and the Plan, the value of the vested Units shall be payable in the form of a single, lump sum payment of cash added to the Participant's next regularly scheduled payroll following the date the Units become vested. Such payment shall be made in an amount equal to the number of vested Units multiplied by the Fair Market Value of each Unit as of the date the Units become vested, plus the sum of any dividend distributions that would have been made with respect to the vested Units had the Units been awarded in shares of NRG Energy, Inc. Common Stock of the Company, rather than in Units for the period beginning on the Grant Date and ending with the date the Participant receives payment.

4. **EXPIRATION AND FORFEITURE OF AWARD:** The Units shall vest and/or expire in the circumstances described below in this <u>Section 4</u>. As used herein, "<u>Termination of Service</u>" means termination of a Participant's employment by or service to the Company, including any of its Subsidiaries.

   a. *Death*

   Upon a Termination of Service by reason of death, the Units shall vest in full and the payment shall be issued and delivered to the Participant's beneficiary as set forth in <u>Section 13</u> of the Plan.

   b. *Qualified Disability*

   Upon a Termination of Service as a result of Disability, the Units shall vest in full and the payment shall be immediately issued and delivered to the Participant. For purposes of this <u>Section 4(b)</u>, "<u>Disability</u>" means a disability that would entitle the Participant to payment of monthly disability payments under any Company long-term disability plan or otherwise determined by the Committee.

   c. *Change in Control*

   If the Company terminates the Participant's employment without Cause in connection with a Change in Control, the Units shall vest in full immediately upon the later of such Change in Control or such termination of employment. The Company's termination of the Participant's employment may be treated as being in connection with a Change in Control only if such termination occurs during the period beginning six (6) months prior to the Change in Control and ending twenty-four (24) months following the Change in Control.

   d. *Eligible Termination*

Upon a Termination of Service by reason of an Eligible Termination (as defined below), the number of Units awarded to the Participant shall be the pro-rated percentage of the total number of Units award equal to the percentage of time during the aggregate vesting period for all Units awarded that the Participant was actually continuously employed by the Company (the "Pro-Rated Award"). The Pro-Rated Award shall vest on the fifteenth (15th) day of the month that follows the month in which the Release (as defined below) becomes irrevocable; provided, that in the event the period during which the Release is revocable spans two (2) calendar years, vesting of the Pro-Rated Award shall occur in the second calendar year.

For purposes of this Section 4(d), "Eligible Termination" means an involuntary Termination of Service in connection with the sale of a business segment, restructuring or reduction in workforce. In order to be deemed an Eligible Termination, the Participant must execute and not revoke a general release of claims in favor of the Company in a form and with terms and conditions drafted by and acceptable to the Company, which is executed, and not revoked, by the Participant as a condition to receiving the benefit described herein (the "Release"). For the avoidance of doubt an involuntary Termination of Service by reason of a Change in Control, for Cause, death, or Disability is not an Eligible Termination. The administrator shall determine, in its sole and absolute discretion, whether a Termination of Service was by reason of an Eligible Termination.

**e. Termination of Service other than as a result of Death, Disability, Change in Control or Eligible Termination**

Upon a Termination of Service by any reason other than death, Disability, Eligible Termination or in connection with a Change in Control, including without limitation as a result of a disability that does not meet the requirements set forth in the definition of such term that is set forth herein, voluntary resignation or termination for Cause, any unvested Units shall expire and be forfeited to the Company.

**f. Clawback/Repayment**

All Units shall be subject to reduction, cancellation, forfeiture, or recoupment to the extent necessary to comply with (i) any clawback, forfeiture, or other similar policy adopted by the Board or the Committee and is in effect from time to time and (ii) applicable law. Further, unless otherwise determined by the Committee, to the extent that the Participant receives any amount in excess of the amount that the Participant should otherwise have received under the terms of the Award for any reason (including, without limitation, by reason of a financial restatement, mistake in calculations or other administrative error), the Participant shall be required to repay any such excess amount to the Company.

**g. Detrimental Activity**

Notwithstanding anything to the contrary contained herein, if a Participant has engaged in any Detrimental Activity, as determined by the Committee, the Committee may, in its sole discretion, provide for one or more of the following: (i) cancellation of any or all of such Participant's outstanding Awards; or (ii) forfeiture by the Participant of any gain realized on the vesting of the Award, and repayment of any such gain promptly to the Company. For purposes of this Agreement "Detrimental Activity" means any of the following: (i) unauthorized disclosure of any confidential or proprietary information of the Company or any Subsidiary; (ii) any activity that would be grounds to terminate the Participant's employment with the Company or any Subsidiary for Cause; (iii) the Participant having engaged in a violation of any provisions of any agreement with the Company or a Subsidiary, containing covenants regarding non-competition, non-solicitation, non-disparagement and/or non-disclosure obligations; or (iv) fraud or conduct contributing to any financial restatements or irregularities, as determined by the Committee in its sole discretion.

### h. *Definition of Cause*

For purposes of this Agreement "Cause," unless otherwise defined in a Participant's written employment arrangement with the Company or any of its Subsidiaries in effect on the date of grant (as amended from time to time thereafter), means the occurrence of one or more of the following events: (i) conviction of, or agreement to a plea of nolo contendere to, a felony, or any crime or offense lesser than a felony involving the property of the Company or a Subsidiary; (ii) conduct that has caused demonstrable and serious injury to the Company or a Subsidiary, monetary or otherwise; (iii) willful refusal to perform or substantial disregard of duties properly assigned, as determined by the Company; (iv) breach of duty of loyalty to the Company or a Subsidiary or other act of fraud or dishonesty with respect to the Company or a Subsidiary; or (v) violation of the Company's code of conduct.

5. **INCORPORATION OF PLAN:** This Agreement and the grant of Units hereunder are subject to the terms and conditions of the Plan, as it may be amended from time to time, which is incorporated herein by reference and made a part hereof. The Plan is maintained in the Company's executive offices, and the Participant has the opportunity to review the Plan. In the event of any conflict between the terms and conditions of this Agreement and the terms and conditions of the Plan, the terms of the Plan shall control.

**NRG ENERGY, INC.**

By: _____

Name:  Mauricio Gutierrez

Title:  President & CEO